## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PAULA RUSH,

      Appellant,

v.                                                          Case No: 8:22-cv-1073-CEH

STEPHEN L. MEININGER and
GENOVESE JOBLOVE & BATTISTA,
P.A.,

      Appellees.

_____

## **OPINION**

Appellant Paula Rush appeals the bankruptcy court's Order Denying Corrective Motion for Rehearing Regarding Motion for Leave to File Separate Legal Action (Doc. 2-255), entered on April 26, 2022.  In the Order, the bankruptcy court denied Appellant's motion for leave to sue Appellee Stephen Meininger, the Chapter 7 Trustee of the underlying bankruptcy proceeding, and Appellee Genovese Joblove & Battista, P.A., the Trustee's counsel.  Appellant timely appealed (Doc. 2-256).

Appellant has filed her initial brief (Doc. 8), and Appellees have filed their response brief (Doc. 11).  The Court heard oral argument on July 21, 2023.

Upon due consideration of the record, the parties' submissions, oral argument and otherwise being fully advised in the premises, the Court concludes that the appeal must be dismissed due to lack of standing.

# I.     BACKGROUND

## A. Bankruptcy Proceedings

In 2019, a corporation named Bruno One, Inc. ("the Debtor") filed a Chapter 11 bankruptcy petition.  Appellant Paula Rush held ten percent of Bruno One, while the remaining ninety percent was held by Caruso Ivan. Doc. 2-13 at 13.[1]   Ivan and Rush were parties-in-interest in the bankruptcy case, which was subsequently converted to a Chapter 7 proceeding. Doc. 2-15.[2]   The court appointed Stephen Meininger as the Chapter 7 Trustee ("the Trustee"), who employed Genovese, Joblove, & Battista, P.A. ("GJB") as his counsel. Doc. 11 at 8.

Bruno One's bankruptcy was necessitated by foreclosure actions that Residential Mortgage Loan Trust I ("RMLT") filed against it in state court.  In those proceedings, Bruno One argued that RMLT lacked standing because it does not exist as a valid legal entity that can sue in Florida courts, and it is not the beneficiary named in the note endorsements. *See* Doc. 2-210 at 2-3.  The argument was not successful, but counterclaims and at least one appeal of an unfavorable judgment remained pending at the time of the bankruptcy proceedings. *Id.* at 5, 113-207 (discussing status of state court litigation during hearing on February 25, 2021); 139-170 (same, during hearing on April 16, 2020).

---

[1] *See* n.9, *infra*.
[2] The Debtor unsuccessfully appealed the conversion. *See* Doc. 2-148; Docket No. 8:19-cv-3006.

RMLT identified itself as the primary secured creditor in the bankruptcy case, asserting that the Debtor owed it more than three million dollars. Doc. 2-197.   The Debtor contended that RMLT could not be a creditor in the bankruptcy because it was not a valid legal entity, but the Trustee declined to challenge RMLT's status on behalf of the estate. Doc. 2-210 at 6-7.  However, in response to a bankruptcy court order, *see* Doc. 2-173 at 2, RMLT turned over a W-9 form and a Trust Agreement to GJB to view in confidence. Doc. 11 at 9-10.  The Trustee represented to the court that the documents, which included a tax identification number, sufficiently established that RMLT was the owner and holder of the loan documents. Doc. 3 at 9-10.   The bankruptcy court denied the Debtor's motion to compel the Trustee to produce the documents to the Debtor, Ivan, or Rush. Docs. 2-190, 2-194, 2-198 at 17-18, 23-25. The court also stated it would not adjudicate any state court foreclosure issues in the bankruptcy proceeding. *Id.* at 8; *see also* Doc. 2-210 at 157.

During the bankruptcy proceedings, the bankruptcy court made findings, "more than once, that there is no equity in this estate that would flow to the equity interest holders for the Debtor." Doc. 2-209 at 7; *see also id.* at 20-21 ("And, remember, what standing does he have when we have an underwater estate with no prospect of a surplus? … Because if RMLT doesn't hold it, it doesn't make the lien go away.  It means we must find who holds the lien. … So, with no surplus coming into the estate, [Ivan] doesn't have standing in the constitutional sense.").

The bankruptcy case resolved in a bulk sale in which the Debtor's assets were liquidated by selling its 24 properties to a single buyer, for a total price of $3,667,700.

Doc. 2-192 at 5.   RMLT was paid $2,305,000 for its 19 properties, in addition to another $94,400 that was held in trust to determine the priority of a competing mortgage lien. *Id.* at 8.   The proceeds from the remaining four properties were given to a second secured creditor. *Id.* at 5.   In addition, the sale order granted the real estate broker a fee of 3.5%, and the Trustee a fee of 11%. *Id.*   The sale order also directed that remaining funds, if any, would be paid to a homeowners association that held a claim against one of the properties. *Id.* at 8.   With respect to the Trustee's fee, GJB stated that it had spent more than $600,000 on the case, but it agreed to accept only $300,000 in payment. Doc. 14-3; *see also* Doc. 3 at 7, 14-15.

The bankruptcy court's sale order stated that RMLT's mortgage liens were "all valid and enforceable by RMLT," and that there was no equity in the 20 properties secured by RMLT's mortgage liens above the amounts due under the liens. Doc. 2-192 at 6.   The order further noted that RMLT agreed to receive "an amount significantly less than the total amount due RMLT[] in consideration for, among other things, the termination of all existing litigation and issues raised therein filed in state and federal court, including this court." Doc. 2-192 at 1.   Ivan was not a party to the latter agreement, as he still intended to pursue attorney's fees in state court. *See* Doc. 2-209 at 14-16.   However, RMLT constructively eliminated the outstanding state court claims by dismissing the foreclosure cases it had filed and vacating the underlying judgments for the pending appeals. Doc. 11 at 12.   No party appealed the sale order,

although Ivan unsuccessfully moved to stay the payment to RMLT pending a determination of its legal status. *See* Doc. 2-199; Doc. 2-209 at 19-20.[3]

## B. Order on Appeal

On February 8, 2022, Appellant Rush filed a Motion for Leave to File Separate Legal Action Against Chapter 7 Trustee Stephen Meininger and Genovese Joblove & Battista, P.A. ("Motion for Leave"). Doc. 2-210.  The motion charged Appellees GJB and the Trustee with neglecting their duty to investigate RMLT's legal status, and concealing and misrepresenting the nature of the RMLT documents they reviewed, which Rush asserted demonstrated RMLT's invalidity. *Id.* at 3-4.  Rush alleged that the misconduct of GJB and the Trustee caused the court to authorize disbursement of funds to a nonexistent legal entity, which caused a loss of equity in the estate. *Id.* at 11, 23.

Appellees opposed the Motion for Leave. Doc. 2-215.  They argued that their actions in reviewing and keeping confidential the RMLT documents were in accord with the bankruptcy court's orders. *Id.* at 6-7.  They also contended they acted in good faith and performed due diligence in determining RMLT's entitlement to the sale proceeds. *Id.* at 6.  Further, Appellees asserted that Rush did not meet her burden of proving a basis for her claim that overcame the Trustee's quasi-judicial immunity. *Id.* at 7-8.

---

[3] Ivan's appeal of this order was dismissed for failure to prosecute. *See* Docket No. 8:21-cv-001.

The bankruptcy court initially denied the Motion for Leave after a hearing at which Rush was not present. Doc. 2-216.[4]  Rush then filed a motion for rehearing to explain her absence, and the merits of both motions were discussed at a hearing on April 25, 2022. Docs. 2-223, 3.  At the hearing, Rush clarified that she did not object to the sale of the properties, but, rather, the fact that "this was never adjudicated in any court. [RMLT] played one court against the other." Doc. 3 at 27-28.

The bankruptcy court questioned Rush's standing to sue the Trustee, asking her to explain how any money would "trickle down" to her as an equity holder, given that the creditor body and the administrative expenses were not paid in full. *Id.* at 5-7.  Rush responded that RMLT's actions had caused a substantial loss in the properties' equity, in which she owned a ten percent stake. *Id.* at 8, 12, 20, 22.   Moreover, she explained her belief that if "the creditors that were legitimate [had] been paid, there would have been extra money that would have returned to equity." *Id.* at 7.  The bankruptcy court stated that someone would need to be paid on the Debtor's loans, whether it was RMLT or another entity, and the court could not see a way that the money would trickle down to equity. *Id.* at 11-12, 14-15, 9, 20, 25, 27-29.  Citing *In re Abdo*, 848 F. App'x 877 (11th Cir. 2021), the court found that Rush lacked standing because she was not a "person aggrieved," as an equity holder with no surplus. Doc. 3 at 16-19. Further, the court explained that a Chapter 7 trustee's role is "to sell assets for whatever the value is that they can get in their business judgment on the date of the sale," and

---

[4] The transcript of this proceeding is not part of the record on appeal.

that settlements are favored in bankruptcy; the Trustee applied its business judgment to find that it was better to resolve the case than to pursue the RMLT argument. *Id.* at 21, 25, 28, 30.

### C. Appellate Arguments

Rush now appeals the denial of her motion for leave. Doc. 8.  She argues that the actions of the Trustee and GJB constituted fraud on the court and a breach of their fiduciary duty. *Id.* at 11, 17, 49-50.  These actions caused her harm because of the loss of equity that she suffered and because of the possibility of prevailing party damages under the fee-shifting statute. *Id.* at 6, 10, 23-24, 50.  Further, she asserts that it was error for the bankruptcy court to deny her an evidentiary hearing and fail to decide her motion on the merits. *Id.* at 19.

In response, Appellees argue that Rush lacks standing to sue them under the "person aggrieved" standard or the constitutional standard. Doc. 11 at 19-23.  In any event, they assert that quasi-judicial immunity protects them from Rush's claims, which they argue lack merit. *Id.* at 23-28.

At oral argument on July 21, 2023, the Court asked the parties to focus on the issue of appellate standing.  Rush argued that she has "person aggrieved" standing because the order she is appealing has taken away her right to seek recovery from Appellees, which would include damages for the loss of her equity interest that resulted from their alleged collusion with RMLT.  She alleged that she held a ten percent equity interest in the Debtor's properties, rather than in the Debtor itself.  Rush also disputed the bankruptcy court's statement that there was no scenario in which money would

have returned to equity, arguing that the loss resulted solely from the Trustee's fraudulent failure to investigate and challenge RMLT's status, which ultimately foreclosed the counterclaims and legal fee claims the Debtor would have been able to pursue.   In addition, Appellees failed to challenge RMLT's monetary demand in bankruptcy court, which was unsupported by their proofs of claim and the payoffs on the Debtor's books.   Rush explained that she was unable to make this information part of the bankruptcy court record, because Appellees refused to raise it and the bankruptcy court declined to hold an evidentiary hearing.   Rush suggested that the Court remand the case to the bankruptcy court for an evidentiary hearing that would establish her standing in addition to verifying her arguments on the merits.

In response, Appellees first argued that Rush's allegation that she held an equity interest in the properties, rather than in the Debtor, was unsupported by the record. Further, they contended that Rush had ample opportunity to place any proof on the record when the bankruptcy court held a hearing on her motion for leave to sue and repeatedly invited her to explain how she would have standing.   In all, they argued that Rush had no standing to sue under either a person aggrieved or Article III standard because her interest was derivative of that of the Debtor, and no information in the record demonstrated the possibility of a surplus.   In any event, Appellees asserted that the bankruptcy court made a finding that RMLT's liens were valid in the sale order, which neither the Debtor nor Rush appealed; as a result, it is subject to *res judicata*.

On rebuttal, Rush argued that *res judicata* does not apply because Appellees fraudulently concealed the proof of RMLT's invalid corporate identity, which prevented her from obtaining it until well after the opportunity to appeal had expired.

## II.  STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a).  This Court functions as an appellate court in reviewing decisions of the bankruptcy court. *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994).  The district court reviews legal conclusions of the bankruptcy court *de novo* and reviews the bankruptcy court's findings of fact for clear error. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). Thus, in reviewing the bankruptcy court's factual findings, the district court must accept the factual findings unless they are clearly erroneous. *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993).

The standard of review applied to a bankruptcy court's decision to grant or deny a motion for leave to sue a trustee is abuse of discretion. *In re Weinhold*, No. 8:17-cv-2672, 2019 WL 13272281, *2 (M.D. Fla. March 29, 2019); *see Sec. & Exchange Comm'n v. N. Am. Clearing, Inc.*, 656 F. App'x 969, 973-74 (11th Cir. 2016), citing *In re McKenzie*, 716 F.3d 404, 422 (6th Cir. 2013); *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012); *In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998); *In re Kashani*, 190 B.R. 875, 886 (9th Cir. BAP 1995); *In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984).  "The application of an abuse-of-discretion review recognizes the range of possible

conclusions the [court below] may reach." *U.S. v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).   Under an abuse of discretion standard, "[b]y definition…there will be occasions in which…we would have gone the other way had it been our call." *Id.* (quotation omitted).   Even in such a scenario, the reviewing court "must affirm unless [it] find[s] that the [lower] court has made a clear error of judgment, or has applied the wrong legal standard." *Id.*

### III.   ANALYSIS

#### A. Rush lacks standing to appeal the bankruptcy court's order.

A threshold consideration is whether Rush has standing to appeal the bankruptcy court's order denying her permission to sue the Trustee.[5]   Neither party addressed the issue of appellate standing in their briefs.   However, the Eleventh Circuit has strictly applied standing requirements to bankruptcy appellants under two separate doctrines.   First, bankruptcy appellants, like all litigants, must have constitutional standing under Article III for this Court to have subject matter jurisdiction. *In re Bay Circle Properties, LLC*, 955 F.3d 874, 877-78 (11th Cir. 2020).   In addition, bankruptcy appellants must also satisfy the stricter "person aggrieved" standard as a prudential matter rather than a jurisdictional one. *Id.* at 879; *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325 n.3 (11th Cir. 2014).

---

[5] Rush asserts, incorrectly, that "Florida requires that controversies…be decided on their merits." Doc. 8 at 19.   On the contrary, a court "cannot rule on the merits of a case after finding that the plaintiff lacks standing." *In re Westport Holdings Tampa, Ltd. P'ship*, No. 21-11767, 2022 WL 964962, *5 (11th Cir. March 31, 2015), citing *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1115 (11th Cir. 2021).

Constitutional standing has three elements: the plaintiff must have suffered an "injury in fact," there must be a causal connection between the injury and the conduct complained of, and it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "injury in fact" is "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent." *Id.* at 560. Here, the injury that would be redressed by a favorable appeal is the bankruptcy court's denial of Rush's ability to sue the Trustee and his counsel. It is unclear whether Rush has a legally protect interest in bringing a *Barton* lawsuit, given that the courts have assigned trustees quasi-judicial immunity. However, she alleges that *Barton* immunity does not apply because Appellees committed fraud. At this stage, the Court must take Rush's allegations as true. *See Lujan*, 504 U.S. at 561 (a court evaluates the elements of standing with the manner and degree of evidence required at the successive stages of the litigation). Accordingly, it is likely that Rush has adequately demonstrated Article III standing for this appeal.[6]

"Person aggrieved" standing is a court-adopted standard for determining whether a party can appeal a bankruptcy court's order. *Bay Circle Properties*, 955 F.3d

---

[6] At oral argument, Appellees appeared to rely on *Bay Circle Properties*, 955 F.3d at 878, to argue that Rush lacks both types of appellate standing. *Bay Circle Properties* will be discussed in detail *infra* with respect to person aggrieved standing. However, it does not control this Court's conclusion regarding Article III standing to appeal, because the *Bay Circle Properties* court was not examining the denial of a *Barton* motion. Here, the injury to Rush, for constitutional standing purposes, is simple: she was denied the opportunity to sue. Whether she had Article III standing *to sue* is a separate question—which will be addressed in Section III(B)—than whether she has Article III standing to appeal the denial of the right to sue.

at 879.  Narrower than Article III standing, the "person aggrieved" standard was developed to limit the right to appeal a bankruptcy decision, in order to "control, in an orderly manner, proceedings that often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the full payment of their outstanding claims against the bankrupt." *In re Westwood Community Two Ass'n, Inc.*, 293 F.3d 1332, 1334 (11th Cir. 2002) (quotation omitted).  The courts sought "to ensure that the goals of bankruptcy were not derailed by a flood of appeals." *Ernie Haire Ford*, 764 F.3d at 1326.

The fact that a party was a party-in-interest in the bankruptcy proceeding does not mean they are a person aggrieved on appeal. *Westwood Community*, 293 F.3d at 1336-37.  Only a person who has a "direct and substantial interest in the question being appealed" is considered a person aggrieved. *Westwood Community*, 293 F.3d at 1334 (quotations omitted).  Further, the party must be "directly and adversely affected pecuniarily," in that they "have a financial stake in the order being appealed" because that order "diminishes their property, increases their burdens or impairs their rights." *Id.* (quotations omitted).  Finally, the interests harmed by the order must be interests the Bankruptcy Code seeks to protect or regulate. *Ernie Haire Ford*, 764 F.3d at 1326. The primary goal of the Bankruptcy Code is to minimize injury to creditors. *Id.* at 1327.

The Eleventh Circuit applied the person aggrieved standard in *In re Abdo*, 848 F. App'x 877 (11th Cir. 2021), to find that the appellant did not have standing to appeal.  The appellant was an unlisted creditor who had pending lawsuits against the

debtor at the time of the bankruptcy filing. *Id.* at 878.   Once the debtor reached a settlement with all creditors except the appellant, the bankruptcy court granted the debtor's motion to dismiss the bankruptcy action. *Id.*   The appellant appealed the denial of her motion for reconsideration of the dismissal, explaining that she wanted to continue in bankruptcy court to "litigate the collateral issue of [the debtor's] fraud." *Id.* at 878-79, 880.   Both the district court and the Eleventh Circuit concluded that appellant was not a person aggrieved, because she had no direct pecuniary interest or financial stake in the dismissal of the bankruptcy action. *Id.*  Rather, her interests were only "tangential and not central to the bankruptcy proceeding." *Id.* at 879-80. Appellant was free to litigate her original claims or any others in state court. *Id.* at 880. The district court also noted that Appellant had no legal right to advance any claims regarding the debtor's alleged fraud in the bankruptcy proceedings. *Id.* at 879.

Likewise, in *Ernie Haire Ford*, the court held that a bankruptcy court order that allowed an adversary proceeding against the appellant to go forward did not *directly* harm him or impair his rights. 764 F.3d at 1326-27 ("Orders allowing litigation to go forward do not burden a party's ability to defend against liability; they simply require parties to exercise that ability."); *cf. In re Heatherwood Holdings, LLC*, 746 F.3d 1206, 1216-17 (11th Cir. 2014) (bank that held title to the property as mortgagee had standing to appeal bankruptcy court's order restricting property's use, which directly impacted its resale value).  The *Ernie Haire Ford* court also found that the appellant's interest in

avoiding liability against the estate did not further the goals of bankruptcy. 764 F.3d at 1327.

Even a debtor is not always a person aggrieved, particularly in Chapter 7 proceedings.  Upon the filing of a Chapter 7 petition, "a debtor is automatically divested of virtually all property interests held as of the commencement of the case and, in turn, these interests immediately vest in the estate." *In re Adomah*, 340 B.R. 453, 456 (S.D.N.Y. 2007) (quotation omitted).  The debtor will only have a financial interest in the proceedings if there is a surplus of funds in the estate that allows a distribution to the debtor after the creditors are paid. *See In re Moon*, 258 B.R. 828, 832-33 (Bankr. N.D. Fla. 2001).  As a result, the Eleventh Circuit found that a debtor-appellant lacked standing to appeal the bankruptcy court's decision to order the administration of the estate's proceedings closed in *Tucker v. Mukamal*, 616 F. App'x 969, 972 (11th Cir. 2015), where it was undisputed that there was no surplus.  The court also rejected the appellant's argument that outstanding issues, such as the award of sanctions, gave him a financial stake in the outcome, because those interests were not specifically protected or regulated by the Bankruptcy Code. *Id.* at 973; *see also In re Petricca*, 718 F. App'x 942, 945 (11th Cir. 2018) (debtor had no direct stake in the disposition of estate property where he would not receive a distribution, and thus had no standing to appeal); *In re Khan*, 544 F. App'x 617, 619-20 (6th Cir. 2013) (chapter 7 debtor had no standing to appeal where her assets were substantially less than her liabilities).

An appellant who has a financial interest in the debtor entity is even less likely to satisfy the person aggrieved standard, because the harm she would suffer from a bankruptcy court order is inherently indirect.  The Eleventh Circuit examined this issue in a series of related appeals by appellant Chittranjan Thakkar.  Thakkar was the manager and member of several limited liability companies that entered bankruptcy proceedings. *See*, *e.g.*, *In re Bay Circle Property, LLC*, No. 22-10521, 2022 WL 16002916, *1 (11th Cir. Oct. 28, 2022).   In each appeal, the court found that Thakkar's membership interest in the limited liability companies and his status as an equity holder did not give him a direct financial stake in the outcome of the bankruptcy court orders. *Id.* at *3.  Rather, "[b]ecause no guarantee existed that Thakkar would receive any surplus remaining even if [the debtor company] satisfied its obligations to its creditors," his interest was an indirect one. *Id.*; *see also In re Bay Circle Properties, LLC*, 955 F.3d 874, 879 (11th Cir. 2020) (no standing where bankruptcy order indirectly injured Thakkar, because it affected the company's pecuniary interest rather than his); *In re Nilhan Financial, LLC*, 832 F. App'x 678 (11th Cir. 2021) (same); *In re Nihan Financial, LLC*, 835 F. App'x 1013 (11th Cir. 2021) (same); *Thakkar v. Greenspoon Marder, P.A.*, 832 F. App'x 678 (11th Cir. 2021) (same); *Thakkar v. Good Gateway, LLC*, 831 F. App'x 479 (11th Cir. 2020) (same).

Other cases have also held that equity holders of a debtor corporation are not persons aggrieved for appellate standing purposes.  In *Sportman's Link, Inc. v. Klosinski Overstreet, LLP*, 591 F. App'x 865, 867 (11th Cir. 2014), the owner of a business that went bankrupt was found to lack standing to appeal because any financial benefits

from the order he sought would flow to the estate, not to him.  Similarly, courts have found that shareholders of a debtor corporation cannot appeal a bankruptcy court decision that affects the debtor or the estate, as their derivative interest is inherently indirect.  *In re Universal Towers Constr., Inc.*, 641 B.R. 691, 702-03 (M.D. Fla. 2022) (collecting cases).  Under this reasoning, the *Universal Towers* court held that the shareholder appellant had no standing to appeal an order that resulted in a four-million-dollar reduction in the debtor's distribution from the liquidating trust.  *Id.* at 703; *see also id.* at 704 (citing "general principles of corporate and bankruptcy law that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets.") (citation omitted); *Rose v. Logan*, No. BR 12-25471-RAG, 2014 WL 1236008, *6 (D. Md. Mar. 25, 2014) (collecting cases, noting "it is clear that the majority of courts facing the issue have found that shareholders—even of closely held corporations—lack standing to pursue appeals of orders of the bankruptcy courts").

Here, as discussed *supra*, the injury to Rush from the bankruptcy court's order is her inability to sue the Trustee and his counsel.  For Rush to have person aggrieved standing to appeal this order, her inability to sue must cause her a direct financial loss, and her interest in suing must align with the goals of the Bankruptcy Code.  *See Ernie Haire Ford*, 764 F.3d at 1326-27.  The Court first finds that Rush has satisfied the latter requirement.  Although bankruptcy policies typically protect trustees from lawsuits,[7] Rush's allegation that a fraud has been committed on the court implicates the inherent

---

[7] *See, e.g.*, *Carter v. Rodgers*, 220 F.3d 1249, 1252-53 (11th Cir. 2000), quoting *In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998).

fairness of the bankruptcy proceeding. *See id.* at 1326.   However, the Court also concludes that Rush has failed to satisfy the requirement that she assert a direct financial harm.   As a result, she does not have person aggrieved standing to appeal. *See Bay Circle Properties*, 955 F.3d at 879-80 ("a party must both show a direct harm *and* hold an interest within the scope of the Bankruptcy code") (emphasis in original).

As an initial matter, the bankruptcy court's denial of Rush's motion to sue Appellees cannot cause Rush direct pecuniary harm because there is no guarantee that her lawsuit would be successful.   This case presents the flip side of *Ernie Haire Ford*, in which the appellant was found to have no direct financial interest in having to defend against a lawsuit. 764 F.3d at 1326.   Even if the lawsuit that the court allowed to go forward resulted in the appellant's liability, the court held that such liability would not be a direct result of allowing the suit to go forward. *Id.*   Similarly, here, any financial *gain* that a lawsuit against Appellees might cause Rush would be only an indirect result of a court order allowing the suit to go forward.   Any loss to her from preventing the suit, then, would also be indirect.   As a result, Rush lacks person aggrieved standing on this basis alone.

Even assuming, *arguendo*, that any ensuing damages would be considered a direct result of allowing the suit to go forward, Rush still has not established that she has a direct stake in any hypothetical award.   She alleges that she was damaged by the actions of the Trustee and his counsel because she lost her ten percent equity stake in the debtor's assets, rental income and employment from the liquidation of those assets, and damages and fees from the state court lawsuits. Doc. 8 at 6, 24, 50.   She further

asserts that the bankruptcy proceeding would not have occurred at all if not for RMLT's fraud, and alleges that Appellees' collusion with RMLT in the bankruptcy proceeding caused the liquidation and sale of the debtor's assets at a lower price than their value. *Id.* at 22, 24. She explained at oral argument that her putative lawsuit would seek damages against Appellees instead of challenging the bankruptcy proceedings. On the other hand, her brief indicated she hopes to overturn the sale order that liquidated the estate's assets and awarded the majority to RMLT. *See id.* at 49 (stating a successful fraud on the court claim may overturn a final judgment in a bankruptcy proceeding). Either way, Rush's financial stake in any distribution or damages is indirect.

First, if the lawsuit resulted in the sale order being overturned, even the Debtor would need to establish the existence of a surplus to demonstrate standing. *See, e.g.*, *Tucker*, 616 F. App'x at 972. Similarly, Rush could not receive damages unless she established that money would have flowed to her—through the Debtor—but for Appellees' conduct. The bankruptcy court repeatedly found that the estate was insolvent; Rush does not provide a basis in the record for concluding that this factual finding was clear error. *See* Doc. 2-209 at 7, 20-21; *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). And an outcome in which the money (more than three million dollars) that was distributed to RMLT simply returns to the Debtor is unlikely, to say the least.[8]

---

[8] As the bankruptcy court explained at the hearing, "Even if [RMLT's alleged fraud] had been adjudicated, someone would have to have the money set aside for the true owner of the

Moreover, Rush is not the Debtor—she is a minority equity holder in the debtor corporation.[9]  As described *supra*, courts have consistently found that equity holders are not persons aggrieved because they have only an only indirect, not direct, interest in the bankruptcy proceedings of a debtor-corporation. *See*, *e.g.*, *Bay Circle Properties*, 955 F.3d at 879; *Sportman's Link*,, 591 F. App'x at 867; *Universal Towers Constr.*, 641 B.R. at 702-03; *see also In re AFY*, 734 F.3d 810, 823 (8th Cir. 2013) (holding that the "possible solvency" of the debtor's estate did not give the shareholder appellant standing) (citation omitted).  Here, too, Rush's interest in a hypothetical surplus is derivative of the Debtor's.  As a result, she "lacks a direct, personal interest and, consequently, is not a person aggrieved for the purposes of standing." *See Universal Towers Constr.*, 641 B.R. at 703 (quotation omitted).

---

money, which is not equity.  It's the holder of the note. … The lien doesn't go away. … It's not a free house.  The mortgage doesn't go away." Doc. 3 at 27-28; *see also* Doc. 2-148 (in Judge Bucklew's order denying appeal of conversion in Case No. 8:19-cv-3006, finding "some entity had secured claims on those properties that would still need to be paid.").  Although Rush indicated at oral argument that she disputes these findings, she conceded that there was no factual support for her position in the record on appeal.

In addition, Rush's assertion that the bankruptcy proceedings would not have occurred but for RMLT's fraud is beside the point in determining standing to appeal the court's order denying her leave to sue. Doc. 8 at 8, 22.  Because she sought to sue the Trustee and his counsel, any damages can relate only to events that occurred as a result of the actions she attributes to them.  Any loss of property equity, rental income, or employment occurred because of RMLT's alleged actions before the bankruptcy proceeding began.  The only financial interest at stake in a chapter 7 proceeding is the distribution of assets upon liquidation.

[9] The record does not support Rush's contention at oral argument that she owned equity in the properties, rather than in Bruno One.  The Debtor's Amended Statement of Financial Affairs identified Rush as the Vice President and ten percent equity holder of Bruno One. Doc. 2-13 at 13.  Further, the Debtor identified its ownership in all properties as 100%. Doc. 2-10.  Finally, Rush was not listed as a potential creditor in the initial filings, Docs. 2-9, 2-11, nor did she appear as one during the proceedings.  Based on this record, the Court finds that she was an equity holder in the Debtor itself.

Rush also argues in her brief that she may receive damages under Florida's fee-shifting statute, Fla. Stat. § 57.105. Doc. 8 at 23.  The possibility of attorney's fees does not make Rush a person aggrieved.  The provision she cites directs the court to award attorney's fees to the prevailing party as a sanction if it finds that the losing party knew or should have known that its arguments were unsupported by the facts or law. Fla. Stat. § 57.105(1).  Such a finding is not guaranteed even if Rush obtained a favorable judgment.  In addition, the court's order denying her permission to sue means that she will not accrue any attorney's fees to be reimbursed, so she has not experienced a pecuniary loss from the denial.  Nor would she experience a gain if the order were overturned, as attorney's fees reimburse for incurred expenses; they do not provide a damages award.  Plus, Rush is proceeding pro se.  The fee-shifting statute does not give her appellate standing.

Rush is not a "person aggrieved" by the bankruptcy court's order denying her leave to sue because she does not have a direct financial interest in the lawsuit. Accordingly, she lacks standing to appeal.  The appeal must be dismissed.

**B. In the alternative, the bankruptcy court did not abuse its discretion.**

Even if Rush had standing to appeal, the Court would find that the bankruptcy court did not abuse its discretion in denying her leave to sue the Trustee and his counsel, because she did not have standing to sue.

The bankruptcy court determined that Rush lacked standing by applying the person aggrieved standard that is applicable to appellate standing.  The Eleventh Circuit has not held that this standard applies at the bankruptcy court level, but some

bankruptcy courts have applied it. *See, e.g., In re Jones*, 494 B.R. 569, 572 (Bankr. M.D. Fla. 2013) (Williamson, J.) ("The standard adopted by the Eleventh Circuit and every other circuit to consider the issue is that only a 'person aggrieved' has standing to object to a bankruptcy order."); *Matter of Technicool Systems, Inc.*, 896 F.3d 382, 385-86 (5th Cir. 2018) (affirming bankruptcy court and district court's finding that appellant lacked standing to contest a motion by the trustee because he was not a person aggrieved); *In re N2N Commerce, Inc.*, 405 B.R. 34, 39 (Bankr. D. Mass. 2009) (applying person aggrieved standard to find movant had standing to file motion to dismiss). Although the Court is not aware of other cases applying the person aggrieved standing standard to a *Barton* motion, neither are there cases stating it was error to do so. The Court cannot say that it was an abuse of discretion for the bankruptcy court to apply it here.

In any event, under the person aggrieved standard or the constitutional standing analysis, it was not an abuse of discretion to find that Rush lacked standing to sue the Trustee and his counsel. As a threshold matter, Rush's reliance on the fact that she was a party-in-interest in the bankruptcy proceeding is unavailing. Doc. 3 at 5. While the term "party-in-interest" is generally understood to encompass anyone whose interests are affected by the proceedings, standing is a narrower inquiry: "[a]n entity may be a real party in interest and have standing in one respect while he may lack standing in another respect." *In re E.S. Bankest, L.C.*, 321 B.R. 590, 595 (Bankr. S.D. Fla. 2005) (collecting cases), quoting *In re Ofty Corp.*, 44 B.R. 479, 481 (Bankr. D.Del.

1984).  The fact that Rush was a party-in-interest does not mean she has standing to bring a *Barton* suit.

A bankruptcy court examined the question of whether a party-in-interest had standing to sue a trustee and the trustee's counsel in *In re Herrera*, 472 B.R. 839 (Bankr. D.N.M. 2012).  The plaintiffs, the heirs of a chapter 7 debtor, filed a complaint for malpractice and breach of fiduciary duty that sought to hold the trustee and counsel liable for an alleged loss of proceeds from a class action. *Id.* at 842-43.  The court first held that "[o]nly the trustee, as the representative of the estate, has the authority to bring an action against the professionals that are supposed to report to her." *Id.* at 844, citing *In re Stoll*, 252 B.R. 492, 495 (B.A.P. 9th Cir. 2000).[10]  Next, the court found that the debtor's heirs had no standing to bring a claim about the size of the estate, "because the debtor has no pecuniary interest in the estate which could be injured by the actions of a trustee." *Id.* at 845.  Because the complaint failed to establish that the debtor would have received a surplus but for the trustee's actions, it was dismissed for lack of standing. *Id.* at 845-46.

Another court reached the same result in *In re Ebel*, 338 B.R. 862 (Bankr. D. Co. 2005), in which the debtor-plaintiff alleged that the trustee breached its fiduciary duties.  Applying the constitutional standing analysis, the court found that the plaintiff failed to allege either a causal link between the trustee's actions and his injuries, or that

---

[10] *See also In re Summit Metals, Inc.*, 477 B.R. 484, 502 (Bankr. D. Del. 2012) ("First, Richardson cannot bring suit against Womble Carlyle in its official capacity as Trustee's counsel, because only the Trustee has the authority to do so.").  Here, too, Rush has not established the ability to sue GJB in its official capacity as Trustee's counsel.

he would have received a benefit from the actions he alleged the trustee should have taken. *Id.* at 869-70.   Moreover, the court found the plaintiff had no standing to complain about the trustee's failure to perform duties that the court determined the trustee did not have. *Id.* at 872-73 ("The focus of the Trustee's duties is the collection and distribution of estate assets for the benefit of creditors.").

Both cases are instructive for evaluating Rush's standing to sue the Appellees. Rush argues that she was damaged by the loss of equity in the Debtor's property, which she stated would have trickled down to her but for the Appellees' (and RMLT's) actions.   As discussed *supra*, however, the bankruptcy court repeatedly found that the estate was insolvent, as its debts and administrative costs exceeded its assets. Importantly, the court made this finding irrespective of whether RMLT was the entity that received the payment for the 20 properties or whether the money went into escrow to find its valid owner—because there was no evidence the money would go back to the estate under any scenario. *See supra* n.8.   This Court finds neither clear error nor an abuse of discretion in these findings.   As in *Herrera* and *Ebel*, Rush lacks standing to sue because she cannot establish that she would have received a benefit but for the Appellees' alleged actions.

For similar reasons, Rush's injury is not fairly traceable to Appellees and a favorable decision in a lawsuit against Appellees would not redress it. *See Lujan*, 504 U.S. 555 (1992); *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) ("Crucial here is that Article III standing requires that the plaintiff's injuries be fairly traceable to the challenged action of the defendant, and not the result of the independent action

23

of some third party not before the court."), citing *Lujan*, 504 U.S. at 560.  The loss of equity in the properties and the loss of other property-related income occurred because of RMLT's actions, which caused the bankruptcy case and therefore predated the Trustee's involvement.  Once the Chapter 7 proceeding was underway, the Trustee's role was to liquidate the Debtor's assets and distribute them to creditors. *See In re Alvarez*, 224 F.3d 1273, 1277 n.9 (11th Cir. 2000) ("in a Chapter 7 case, a trustee is appointed who is charged with the duty of liquidating the assets in the debtor's bankruptcy estate with the goal of satisfying as many of the creditors' claims as possible.").  Rush argues, correctly, that a successful fraud on the court claim could result in the sale order being overturned. Doc. 8 at 11, 49.  But it could not turn back time and eliminate the Chapter 7 proceedings. *See Alvarez*, 224 F.3d at 1277 (finding that the inadvertent filing of a Chapter 7 petition caused the debtor harm because it resulted in the loss of ownership and control of his assets); *see also* Doc. 3 at 6-7 ("Ma'am, you're in Chapter 7.  The Trustee sells and the Trustee gets whatever the Trustee gets for the properties.").[11]  Rush has not established that the damages she alleges are attributable to Appellees' conduct, nor that they could be redressed by a favorable outcome in her lawsuit.  Under either a person aggrieved standard or a

---

[11] Rush appears to argue that the Trustee should have stepped in to defeat the state court foreclosure actions, thereby obviating the need for the liquidation of the Debtor's assets. Doc. 11 at 24.  Setting aside the improbability of this outcome, she cites no authority for the proposition that a Chapter 7 Trustee's duties extend this far. *See Alvarez*, 224 F.3d at 1277 n.9; *see also In re Rigden*, 795 F.2d 727, 730 (9th Cir. 1986) ("The trustee…has a fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors.") (citations omitted).

constitutional standard, the Court finds that the bankruptcy court did not abuse its discretion in concluding that Rush did not have standing to sue Appellees.[12]

Finally, the bankruptcy court also did not abuse its discretion in declining to hold an evidentiary hearing. *Cf.* Doc. 8 at 8, 19. The bankruptcy court was not required to hear additional evidence on the issue of standing where the record was well developed and the court was very familiar with the parties and proceedings by this point in the litigation. *See, e.g., Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1232 (11th Cir. 2021) (district court did not abuse its discretion in declining to hold evidentiary hearing where record was well developed and appellant had opportunity to present evidence to support her arguments). At oral argument, for the first time, Rush raised the existence of evidence she alleged would demonstrate that she would have received a surplus but for Appellees' actions. But she neither brought this evidence to the attention of the bankruptcy court nor asked for an additional opportunity to do so. The Court cannot find that the bankruptcy court abused its discretion in declining to hold an evidentiary hearing based on the record before it. In

---

[12] The Court also finds that Rush would not have standing to bring a motion under Federal Rule of Civil Procedure 60(b) alleging fraud on the court. The Eleventh Circuit has applied a stricter standing standard for non-parties to a judgment, holding that non-parties do not have standing to bring such a motion unless their "interests are directly affected by the final judgment." *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1520-21 (11th Cir. 1987); *see also Judith v. Commonwealth of the Northern Mariana Islands*, No. 6:11-cv-1927, 2012 WL 13136859, *6 (M.D. Fla. May 25, 2012) (plaintiffs who were not bound by the default judgments they sought to challenge and did not sufficiently allege that they were presently directedly affected by them had no standing to assert fraud on the court claim.). Here, although Rush was a party-in-interest in the bankruptcy proceeding, she was not a party to the sale order itself. For the same reasons as person aggrieved standing, the Court finds that her interests were not *directly* affected by the actions she sought to challenge. She therefore lacks standing under the Eleventh Circuit's Rule 60(b) standard.

contrast, the argument in Rush's brief regarding a hearing seems to be aimed toward the bankruptcy court's decision not to address the merits of her arguments about the Appellees' conduct. Doc. 8 at 19.  As noted *supra* n.4, however, a court should not address the merits if it finds that a litigant lacks standing.  Therefore, even if Rush did have standing to appeal the bankruptcy court's order, it did not abuse its discretion.

Accordingly, it is hereby **ORDERED**:

1. Appellant Paula Rush's appeal is **DISMISSED** for lack of standing.

2. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 24, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties